IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NO. 18-219 |
| TYRONE EVANS | |

**PAPPERT, J.**                                                                                           **July 13, 2022**

### MEMORANDUM

Tyrone Evans seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court denies the Motion because extraordinary and compelling reasons do not warrant his release and, in any event, the factors under 18 U.S.C. § 3553(a) counsel against granting relief.

I

A

Evans orchestrated three armed robberies of Philadelphia convenience stores, serving as a lookout while co-conspirators demanded cash and threatened to shoot or kill store employees. *See United States v. Evans*, 858 F. App'x 40, 41 (3d Cir. 2021). In one of the holdups, his co-conspirator hit a clerk several times with his pistol. *Id.* Evans denied any role in the robberies after his arrest, but made several recorded phone calls to his girlfriend and others from the Federal Detention Center. He asked his girlfriend to delete social media accounts that could tie him to the crimes and told others to "lay low." *See id.; see also* (Gov't Resp., ECF 64 at 2.) Evans ultimately pled guilty to three counts of Hobbs Act robbery and three counts of aiding and abetting the brandishing, use and carrying of a firearm during a crime of violence. (*See* ECF 47.)

The Court sentenced Evans to 300 months imprisonment, including consecutive 84-month sentences for each of the firearms charges. (*Id.*) He appealed and the Third Circuit affirmed his sentence. *Evans*, 858 F. App'x at 41. He has served approximately 52 months so far and, as of April 2022, received approximately five months of credit for good conduct, for around 57 months of total time served. (Gov't Resp., ECF 64 at 2.) Despite earning good conduct time, he has been disciplined while incarcerated, receiving sanctions for fighting (twice), possession of drugs and for refusing to follow orders. (*Id.* at 2-3.)

B

In his *pro se* motion, Evans seeks compassionate release based on the threat of COVID-19. (Mot. For Release, ECF 62.) When sentenced, Evans reported he was in good overall health and had no chronic illnesses. (Gov't Resp., ECF 64 at 2 (citing PSR ¶ 80).) He acknowledged a lengthy history of substance abuse, including daily use of marijuana, Xanax and other controlled substances. (Gov't Resp., ECF 64 at 2 (citing PSR ¶ 84).) He now contends he is at risk of severe illness from COVID-19 because of his substance abuse history, his status as a former smoker and because he is obese. (Mot. for Release, ECF 62 at ECF p. 5.) He reports he is five feet, two inches tall and weighs 255 pounds with a BMI that qualifies him as obese.[1] (*Id.*)

Evans's medical records show he was quarantined in July 2020 due to possible coronavirus exposure. (Gov't Am. Ex. A., ECF 72, at 13.) He exhibited no fever over eleven days and there is no evidence he contracted the virus at the time. (*Id.* at 15.)

---

[1] At an October 4, 2020 medical visit, Evans was reported to be five feet, four inches tall and weighed 223 pounds, also resulting in an "obese" BMI. (Gov't Am. Ex. A., ECF 72, at 8.)

Evans received doses of the Pfizer-BioNTech COVID-19 vaccine on March 3 and 23, 2021.[2]  (*Id.* at 22.)

II

A

A district court may reduce an inmate's sentence as a form of compassionate release only if it finds that (1) extraordinary and compelling reasons warrant such a reduction; (2) the sentencing factors set forth in § 3553(a), to the extent they are applicable, warrant a reduction; and (3) the reduction is consistent with applicable policy statements issued by the Sentencing Commission.  18 U.S.C. § 3582(c)(1)(A).[3]  Relevant § 3553(a) factors a court must consider include the "nature and circumstances of the offense," "the history and characteristics of the defendant," and the "need for the sentence imposed—to reflect the seriousness of the offense, . . . promote respect for the law, . . .  provide just punishment for the offense" and "protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(1), (2)(A), (C).  The applicable Sentencing Commission policy statement requires a court to determine a defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. 3142(g)" prior to release.  U.S.S.G. § 1B1.13.

B

Evans argues the conditions at FCI Beckley place him at heightened risk of

---

[2]     Evans acknowledges that he has been vaccinated despite also stating that "he has not gotten vaccinated because it is against his religion." (Mot. for Release, ECF 62 at 5.)

[3]     Evans sought compassionate release from the warden at FCI-Beckley (Mot. for Release, ECF 62 at ECF p. 11) but his request was denied.  (*Id.* at ECF p. 9-10.)  The Government agrees Evans has satisfied 18 U.S.C. § 3582(c)(1)(A)'s administrative exhaustion requirement.  (Gov't Resp., ECF 64 at 3.)

3

serious illness from COVID-19 given his history of substance abuse and smoking and his obesity. (Mot. for Release, ECF 62 at 2-4.) Nevertheless, neither the facility's conditions nor Evans's medical history present extraordinary or compelling reasons for reducing his sentence. "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). At a minimum, Evans must show his conditions put him at particular risk. *See United States v. Ulmer*, No. 18-00579-3, 2021 WL 844579, at *1 (E.D. Pa. Mar. 5, 2021). He has not.

Evans received a COVID-19 vaccine, mitigating the risk of severe illness if he ever does become infected. *See United States v. Berry*, No. 09-116, 2021 WL 3537145, at *3 (E.D. Pa. Aug. 11, 2021) (holding an inmate's "vaccination status provides sufficient protection against the risks" even though he suffered "from medical conditions making him more vulnerable to serious illness or death from COVID-19"); *see also United States v. Estevez-Ulloa*, No. 21-2432, 2022 WL 1165771, at *2 (3d Cir. Apr. 20, 2022) ("'[W]ith access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated.'") (quoting *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021)); *United States v. Graham*, No. 12-418-2, 2022 WL 254623, at *4 (E.D. Pa. Jan. 27, 2022) ("Although the COVID vaccines do not prevent all infections, they have been found to provide strong protection from severe disease, hospitalization, and death from COVID-19 . . . .") Evans points to specific concerns about the Delta and Omicron variants. (Mot. for Release, ECF 62 at 2, 4.) However, vaccination is still expected to protect against severe illness, hospitalization and death after infection with either

variant. *See United States v. Riddick*, No. 95-73-1, 2022 WL 138074, at *4 (E.D. Pa. Jan. 14, 2022) (finding no extraordinary circumstances where "[t]he current vaccines are also expected to protect against severe illness, hospitalization and deaths due to infection with the newer Omicron variant"); *United States v. Gibbs*, 96-539-2, 2021 WL 3929727 (E.D. Pa. Sept. 2, 2021) (denying motion for compassionate relief notwithstanding the spread of the Delta variant in part because the "defendant ha[d] been inoculated against COVID-19 with a highly effective vaccine"). Evans offers no argument why his history of substance abuse and smoking or his obesity negate the vaccine's protections against severe complications from the virus.

C

Even if Evans did present extraordinary and compelling reasons for release, it would be unwarranted based on the § 3553(a) factors. *See United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (affirming denial of compassionate release for at-risk inmate because "the § 3553(a) factors weigh[ed]" against release). The Court carefully considered these factors when Evans was sentenced in 2019 and does so again now.

Evans acknowledges that he is in custody for violent crimes – in his view, the result of a "bad decision." (Mot. for Release, ECF 62 at 5.) He asks the Court to balance his past conduct against his completion of his GED in prison, his desire to complete additional classes despite COVID-related programming limitations, his plea to see his young children, his family's support and his religious faith. (*Id.*) These factors are not sufficient to tip the scale in favor of granting compassionate relief. Evans has served only a fraction of the Court's sentence, which he deserved for orchestrating and participating in three gunpoint robberies in 2017 when he was

already under court supervision in Montgomery and Philadelphia counties for prior theft and firearms convictions.  (*See* Gov't Sentencing Mem., ECF 42 at 2.)  He has not shown how an early release would promote respect for the law, reflect the seriousness of his offense, provide just punishment for it, or – given his history of prior convictions – protect the public from further crimes.  *See* 18 U.S.C. § 3553(a).

### D

Evans also seeks release for a non-COVID reason:  he alleges the Court's imposition of consecutive sentences for each of the 18 U.S.C. § 924(c) counts violated the First Step Act.[4]  (Mot. for Release, ECF 62 at 2.)  But Evans was sentenced after Congress amended Section 924(c) in 2018.  He received consecutive 84-month terms for each conviction under Section 924(c) for a total of 252 months.  As the Government points out, prior to the First Step Act, those mandatory consecutive sentences would have totaled 684 months.  (Gov't Resp., ECF 64 at 21 n.5.)  Congress retained the requirement that any term for a Section 924(c) crime must run consecutively to any other sentence.  *See* Pub. L. No. 115-391, tit. IV, § 403, 132 Stat. 5194, 5221-22 (Dec. 21, 2018).  The duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance.  *United States v. Andrews*, 12 F.4th 255, 260-61 (3d Cir. 2021), cert. denied, 142 S. Ct. 1446, 212 L. Ed. 2d 541 (2022).

### III

Finally, Evans asks the Court to appoint him counsel.  (Mot. For Release, ECF

---

[4] Evans also argues without further explanation that 18 U.S.C. 922(g) "is unconstitutional because it exceeds the limits of congress [sic] power under the commerce clause."  The Third Circuit has held otherwise.  *United States v. Singletary*, 268 F.3d 196, 204-05 (3d Cir. 2001) (holding section 922(g)(1) is within Congress' authority under the Commerce Clause).

62 at 7.) A defendant seeking compassionate release does not have a constitutional right to an attorney. *United States v. Dorsey*, 520 F. Supp. 3d 681, 684 (E.D. Pa. 2021). The Court has discretion to appoint counsel for an indigent litigant only where the issues involved warrant an attorney's participation. *Id.* As an initial matter, the Court must assess whether Evans's motion "has some arguable merit in fact and law." *Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002) (citing *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993)). It does not. Even if it did, it would not be necessary to appoint counsel in light of Evans's demonstrated ability to present his own case; the complexity of the legal issues; the degree to which he was able to pursue necessary factual investigation; the limited role of credibility determinations in deciding his motion; and because there is no need for expert witness testimony. *See Tabron*, 6 F.3d at 155-57; *see also Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997) (citing *Tabron*, 6 F.3d at 155-56, 157 n.5) (explaining the *Tabron* factors are just a "guidepost" for the Court and that "courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases").

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.